IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| **PROMPT MEDICAL SYSTEMS, L.P.,** | § § § | |
| **Plaintiff,** | § § | |
| vs. | § § | CASE NO. 6:10-CV-71 |
| **ALLSCRIPTSMYSIS HEALTHCARE SOLUTIONS, INC., et al.,** | § § § § | |
| **Defendants.** | § § | |

### MEMORANDUM OPINION AND ORDER

This Memorandum Opinion construes the disputed terms in U.S. Patent No. 5,483,443 ("the '443 patent").

### BACKGROUND

Plaintiff, Prompt Medical Systems, L.P. ("Prompt"), filed suit against multiple defendants on March 2, 2010, alleging infringement of the '443 patent. Prompt then filed suit against Medicomp Systems, Inc. on April 13, 2011, also alleging infringement of the '443 patent. These two cases were consolidated on August 16, 2011, per consent of the parties. *See* Docket No. 360.

This Court has already construed the '443 patent in a *Markman* opinion involving three earlier cases filed by Prompt. *See Prompt Medical Systems, L.P. v. McKesson Corp.*, 2006 U.S. Dist. LEXIS 54808 (E.D. Tex. July 21, 2006) ("*McKesson*"). Many of the disputed terms in this case were addressed in that opinion.

The '443 patent is directed towards a method for computing Current Procedural Technology ("CPT") codes from physician-generated documentation. CPT codes provide a uniform language to describe a physician's work, which facilitates patient billing for medical and

surgical procedures, diagnostic tests, laboratory studies, and other medical services rendered. Evaluation and management ("E/M") services codes are a subset of CPT codes used to classify the type of work physicians engage in. E/M services are broken down into three key components, which correspond generally to aspects of a physician–patient encounter: patient history, examination, and medical diagnosis.

The invention permits physicians to record medical data by entering information about patient encounters into a computer. For each component of the physician–patient encounter, the computer prompts the physician with lists from which the physician chooses the particular descriptions that best characterize the patient's status. Each description has a CPT code assigned to it. When the physician enters his or her choices, the computer factors the corresponding codes into a final calculation to arrive at an automatic determination of how much a patient should be charged for an encounter.

## APPLICABLE LAW

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). In claim construction, courts examine the patent's intrinsic evidence to define the patented invention's scope. *See id.*; *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). This intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *See Phillips*, 415 F.3d at 1314; *C.R. Bard, Inc.*, 388 F.3d at 861. Courts give claim terms their ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the

context of the entire patent. *Phillips*, 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

The claims themselves provide substantial guidance in determining the meaning of particular claim terms. *Phillips*, 415 F.3d at 1314. First, a term's context in the asserted claim can be very instructive. *Id.* Other asserted or unasserted claims can also aid in determining the claim's meaning because claim terms are typically used consistently throughout the patent. *Id.* Differences among the claim terms can also assist in understanding a term's meaning. *Id.* For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id.* at 1314–15.

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id.* (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *see also Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). This is true because a patentee may define his own terms, give a claim term a different meaning than the term would otherwise possess, or disclaim or disavow the claim scope. *Phillips*, 415 F.3d at 1316. In these situations, the inventor's lexicography governs. *Id.* Also, the specification may resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc.*, 299 F.3d at 1325. But, "'[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.'" *Comark Commc'ns,*

3

*Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *see also Phillips*, 415 F.3d at 1323. The prosecution history is another tool to supply the proper context for claim construction because a patent applicant may also define a term in prosecuting the patent. *Home Diagnostics, Inc., v. Lifescan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent.").

Although extrinsic evidence can be useful, it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc.*, 388 F.3d at 862). Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent. *Id.* at 1318. Similarly, expert testimony may aid a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition is entirely unhelpful to a court. *Id.* Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.*

## CLAIM TERMS

**comparing the [historical/examination/medical decision making] data to a set of [historical/examination/medical decision making] criteria to define [a/an] [history/examination/medical decision making] code**

**computing a component [historical/examination/medical decision] code based on said input and a set of stored [historical/examination/medical decision] criteria**

Defendants and Prompt have grouped these six disputed terms throughout their arguments and agree that they should be handled similarly. Accordingly, the following analysis

4

specifically addresses the first term: "comparing the historical data to a set of historical criteria to define a history code." However, this analysis is applicable to the remaining five terms in this group, and constructions are provided for all six terms following the analysis.

>Prompt proposes that the Court adopt its prior construction of this term from *McKesson*:
>
>comparing information consisting of the patient's current health and, optionally, any previous medical history and any related family or social problems that becomes the basis for the patient's medical record and required documentation to certain adjustable, customized standards during the patient encounter in order to determine a value associated with the historical component in generating a CPT code.

In *McKesson*, the dispute concerned the meaning of the root term "historical data." *See McKesson*, 2006 U.S. Dist. LEXIS 54808, at *13. Here, Defendants argue that the previous construction should include additional language indicating the frequency of determining the historical component of the CPT code. Defendants propose the following underlined modifications to the latter portion of Prompt's proposed construction: "during the patient encounter in order to <u>automatically</u> determine <u>and continuously update</u> a value associated with the historical component in generating a CPT code."

Defendants rely on several statements in the Background of the Invention and Summary of the Invention to support the proposed "automatically and continuously update" limitation. *See, e.g.*, '443 Patent col. 3:65–4:1 ("This invention allows a physician to record medical data and assign codes to medical diagnoses while the appropriate code associated with the encounter is automatically calculated."); *id.* col. 3:21–22 ("A further object of the invention is to provide real-time calculations of the code during the patient encounter."); *id.* col. 3:24–26 ("The inventions calculates the codes as each portion of the encounter is entered into the documentation system."). As specific support for the limitation regarding historical data and criteria, Defendants rely on the description of the preferred embodiment of the invention. *See id.* col. 7:38–40 ("The [history-

component code determination] process is repeated with each addition in all sections of the history component—criteria are checked and History-component codes recalculated."). Defendants argue that these statements in the specification mandate, under Federal Circuit law, that the "automatically and continuously update" limitation be read into the claims. *See Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1318 (Fed. Cir. 2006) (limiting the claimed invention based on the written description referring to "the fuel filter as 'this invention' or 'the present invention'"); *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1308 (Fed. Cir. 2007) (limiting the claimed invention based on language concerning "this present invention" in the Disclosure of the Invention).

Prompt responds that these passages are insufficient to support reading the "automatically and continuously update" limitation into the claims. First, the language "during the patient encounter" in the Court's prior construction addresses the fact that the codes are calculated automatically and in real-time. Prompt also responds that it is improper to import claim limitations from the description of the preferred embodiment. Finally, Prompt notes that claim 10 of the invention regards computation of the medical codes "each time input is received" and argues that this explicitly captures Defendants' proposed limitation. Prompt argues that importing this same limitation into the independent claims would render claim 10 superfluous, violating the presumption under the doctrine of claim differentiation.[1] *See Comark Commc'ns v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) ("There is presumed to be a difference in meaning and scope when different words or phrases are used in separate claims. To the extent that the absence of such difference in meaning and scope would make a claim superfluous, the

---

[1] Claim 10 is dependent on claim 5; however, independent claim 5 is similar to independent claim 1, which contains this term. As mentioned earlier, Defendants and Prompt have grouped this term with five others, arguing that they should be handled similarly. The first three terms relate to claim 1, and the second three terms relate to claim 5. Defendants argue for the "automatically and continuously update" limitation in all six terms.

doctrine of claim differentiation states the presumption that the difference between claims is significant." (quoting *Tandon Corp. v. U.S. Int'l Trade Comm.*, 831 F.2d 1017, 1023 (Fed. Cir. 1987))).

Defendants' proposed construction improperly imports limitations from the specification into all of the claims-at-issue, and their reliance on *Honeywell* is misplaced. In *Honeywell*, the court construed "fuel injection system component" to mean "fuel filter" based on multiple references to "fuel filter" as "the invention" in the written description. *Honeywell*, 452 F.3d at 1318. Here, Defendants present several passages from the specification that indicate the computation of CPT codes occurs "automatically," in "real-time," or "concurrent[ly]." However, these passages do not dictate that *all* calculations performed as part of the invention are performed in such a manner. Rather, the predominant purpose of the invention is to generate a final CPT code automatically in response to information gathered during the physician–patient encounter. Prompt's proposal and this Court's prior construction included language to capture this aspect of the invention—namely, "during the patient encounter." Finally, concurrent updates—to the extent that they are alluded to in the specification—are more properly attributed to claim 10. There is no reason to depart from the Court's earlier construction in *McKesson*, and the Court construes the six grouped terms as follows:

- "comparing the historical data to a set of historical criteria to define a history code" as

  comparing information consisting of the patient's current health and, optionally, any previous medical history and any related family or social problems that becomes the basis for the patient's medical record and required documentation to certain adjustable, customized standards during the patient encounter in order to determine a value associated with the historical component in generating a CPT code;

- "comparing the examination data to a set of examination criteria to define an examination code" as

7

- comparing information that is the actual physical examination by the physician and any tests or procedures ordered or provided that becomes the basis for the patient's medical record and required documentation to certain adjustable, customized standards during the patient encounter in order to determine a value associated with the examination component in generating a CPT code;

- "comparing the medical decision making data to a set of medical decision making criteria to define a medical decision making code" as

  comparing information which is the result of the interaction of the history and examination portions of the encounter and represents the level of difficulty to the physician for forming a diagnosis and treatment plan(s) that becomes the basis for the patient's medical record and required documentation to certain adjustable, customized standards during the patient encounter in order to determine a value associated with the medical decision making component in generating a CPT code;

- "computing a component historical code based on said input and a set of stored historical criteria" as

  using a computer during the patient encounter to determine a value associated with the historical component in generating a CPT code based on choices corresponding to a patient's medical status that become the basis for the patient's medical record and required documentation fed into the computer and an adjustable, customized standard automatically applied by the computer to the portion of the patient's medical record and required documentation consisting of the patient's current health and, optionally, any previous medical history and any related family or social problems, on which a decision may be based;

- "computing a component examination code based on said input and a set of stored examination criteria" as

  using a computer during the patient encounter to determine a value associated with the examination component in generating a CPT code based on choices corresponding to a patient's medical status that become the basis for the patient's medical record and required documentation fed into the computer and an adjustable, customized standard automatically applied by the computer to the portion of the patient's medical record and required documentation that is the actual physical examination by the physician and any tests or procedures ordered or provided, on which a decision may be based;

- "computing a component medical decision code based on said input and a set of stored medical decision criteria" as

8

>   using a computer during the patient encounter to determine a value associated with the medical decision component in generating a CPT code based on choices corresponding to a patient's medical status that become the basis for the patient's medical record and required documentation fed into the computer and an adjustable, customized standard automatically applied by the computer to the portion of the patient's medical record and required documentation including the information which is the result of the interaction of the history and examination portions of an encounter and represents a level of difficulty to the physician for forming a diagnosis and treatment plan(s), on which a decision may be based.

**comparing the historical code, the examination code, and the medical decision making code to a set of final criteria to define a final CPT code**

Prompt proposes that the Court adopt its prior, undisputed construction of this term: "comparing the values associated with the historical component, examination component, and medical decision making component to a standard on which the final CPT code is based during the patient encounter." Defendants contend that this proposed construction should be clarified by appending language to define the "standard on which the final CPT code is based." Defendants' proposed amendment is:

>   . . . during the patient encounter, the standard being (a) if the component historical code, examination code and medical decision making code are identical, defining the final CPT code to be equal to any one of the three component codes; and (b) if the component codes are different, defining the final CPT code to be equal to the lowest of the three components codes.

Prompt argues that Defendants' proposal imports a limitation regarding a specific embodiment. While Prompt acknowledges that the specification describes a calculation of the final CPT code in a manner similar to that proposed by Defendants, it asserts that this passage is merely a description of the preferred embodiment as illustrated in Figure 7 of the specification. *See* '443 Patent col. 7:20–25 ("If the three component codes . . . are identical 710, the Final Code is the component code 716. If the three component codes are different 712, the lowest component code is the Final code 718."). To support its argument, Prompt identifies other portions of the specification that do not adhere to such a strict definition of the final criteria or

9

standard to be used in computing the final CPT code. *See, e.g.*, *id.* col. 4:28–31 ("[T]he final code is calculated independently (FIG. 9) based upon the amount of time since the last encounter. The final codes are determined from this comparison to meet necessary criteria."); *id.* col. 17 (indicating that certain final code calculations rely on two of the three component codes, i.e., the historical and decision making components or the examination and decision making components).

Defendants contend that the language describing Figure 7 in the specification, quoted earlier, is the only description of computing the final CPT code. Additionally, Defendants argue that the use of "comprising" in claims 1 and 5 requires that all three component codes be used in calculating the final CPT code as opposed to the two-code approach noted in Appendix B of the '443 patent. Finally, at the *Markman* hearing, Defendants asserted that the computation of final CPT codes is based on the standards and criteria promulgated by the American Medical Association ("AMA") and that their proposed construction comports with this standard.

Defendants again seek to import claim limitations from the specification where there is no clear disavowal of claim scope. Defendants' proposed construction stems directly from a description of the preferred embodiment of the invention, and there are other statements regarding computation of the final CPT code that are not so restrictive as their proposal. Further, Defendants' comprising argument is unavailing because Prompt's proposed construction ensures that three component codes are used in the comparison. Finally, neither party disputes that the final CPT codes are computed based on AMA standards, and Prompt noted at the *Markman* hearing that these standards change over time. The final criteria or standard for computing final CPT codes does not require the additional definition proposed by Defendants. Accordingly, the Court construes "comparing the historical code, the examination code, and the medical decision

making code to a set of final criteria to define a final CPT code" as "comparing the values associated with the historical component, examination component, and medical decision making component to a standard on which the final CPT code is based during the patient encounter."

**computing a final CPT code based on said historical code, said examination code and said medical decision code and a set of stored patient encounter criteria**

Prompt proposes that the Court adopt its prior, undisputed construction of this term: "using a computer during the patient encounter to determine the final CPT code based on the values associated with the historical component, examination component, and medical decision making component to an adjustable, customized standard related to the physician's encounter with the patient." Defendants again contend that this proposed construction should be clarified by appending language to define the standard on which the final CPT code is based. Defendants' proposed amendment is:

> . . . physician's encounter with the patient, the standard being (a) if the component historical code, examination code and medical decision making code are identical, defining the final CPT code to be equal to any one of the three component codes; and (b) if the component codes are different, defining the final CPT code to be equal to the lowest of the three components codes.

The parties' arguments regarding this term are the same as those for the previous term relating to the standard for computing the final CPT code. For the same reasons, the Court adopts its prior construction and construes "computing a final CPT code based on said historical code, said examination code and said medical decision code and a set of stored patient encounter criteria" as "using a computer during the patient encounter to determine the final CPT code based on the values associated with the historical component, examination component, and medical decision making component to an adjustable, customized standard related to the physician's encounter with the patient."

**weighting said [historical/examination/medical decision] code based on the number of times [a/an] [historical/examination/medical decision] criterion is met**

These three terms concern weighting each of the historical, examination, and medical decision codes based on the number of times certain criteria are met. Prompt proposes "assigning a level of influence to the [historical/examination/medical decision] code based on the number of times [a/an] [historical/examination/medical decision] criterion is met." Defendants propose:

> Using a computer during the patient encounter to count the number of occurrences of [a/an historical/examination/medical decision criterion] in order to automatically determine and continuously update a relative importance to the value associated with the [historical/examination/medical decision] component in generating a CPT code.[2]

The predominant dispute revolves around the definition of the term "weighting."

Defendants argue that "weighting," as described in the specification, should be limited to "counting." To support their proposal, Defendants cite the following statement in the patent specification: "The rule engine in this invention also considers the number of times a particular rule is met." '443 Patent col. 10:27–28. Further, the Defendants cite the detailed discussion of Figure 4 of the '443 patent, which repeatedly states that counters are incremented while determining sub-components of the medical decision making code. *See id.* col. 8:60–9:22. Finally, Defendants argue that the "using a computer" prefix is necessary to provide clarity to the jury.

Prompt argues that Defendants' proposal improperly imports claim limitations from language in the specification directed to a particular embodiment of the invention. Prompt asserts that the claim language indicates that the "weighting" is "*based* on the number of times a . . . criterion is met" rather than *is* the number of times a criterion is met. '443 Patent Claim 6

---

[2] Defendants' proposals incorporate the agreed constructions of "historical criteria," "examination criteria," and "medical decision criteria." The agreed construction has been replaced with "[a/an historical/examination/medical decision criterion]" for clarity.

(emphasis added). Thus, Prompt proposes that "weighting" means "assigning a level of influence" based the following definition of "weight" taken from a 1993 Merriam-Webster's Collegiate Dictionary: "the relative importance or authority accorded something." Finally, Prompt argues that the "using a computer" prefix is redundant because claim 5, from which claim 6 depends, recites "[a] process for computing."

The inclusion of definitions for already construed terms, as proposed by Defendants, is unnecessary and yields a bulky construction for an otherwise easy-to-follow term. Additionally, Defendants attempt to improperly import limitations on the term "weighting" from the specification. The discussion of Figure 4 in the specification provided an embodiment of weighting; it did not specifically limit the meaning of weighting. Thus, the Court construes the three terms related to weighting as follows:

- "weighting said historical code based on the number of times a historical criterion is met" as "assigning a level of influence to the historical code based on the number of times a historical criterion is met";

- "weighting said examination code based on the number of times an examination criterion is met" as "assigning a relative level of influence to the examination code based on the number of times an examination criterion is met"; and

- "weighting said medical decision code based on the number of times a medical decision criterion is met" as "assigning a level of influence to the medical decision code based on the number of times a medical decision criterion is met."

**queries comprise diagnostic lists used in generating a patient's medical record**

Prompt proposes "queries comprise diagnostic lists used in creating, amending, and/or supplementing a patient's medical record," which focuses on the construction of "generating."

13

Defendants propose "queries comprise lists of the symptoms or characteristics that provide support for specific diagnosis." However, at the *Markman* hearing, the parties agreed to the proposed construction "queries comprise lists of symptoms and characteristics used in creating, amending, and/or supplementing a patient's medical record," which incorporates Prompt's construction of "generating" and the bulk of Defendants' construction of "diagnostic lists." Accordingly, the term "queries comprise diagnostic lists used in generating a patient's medical record" is construed, as agreed, as "queries comprise lists of symptoms and characteristics used in creating, amending, and/or supplementing a patient's medical record."

**final CPT code**

Prompt argues that "final CPT code" does not require construction because one of ordinary skill in the art at the time of the invention would have understood its meaning. Alternatively, if the Court determines the term requires construction, Prompt proposes "a derived CPT code." Defendants propose "a five digit number published by the AMA that is equal to one of the history code, examination code or medical decision making code that is automatically determined and continuously updated during the patient encounter and that is communicated to a third party payor to describe the medical services rendered."

A CPT code is well-understood by a person of ordinary skill in the art as a code promulgated by the AMA to provide "a uniform language that details medical, surgical, and diagnostic services." '443 Patent col. 1:34–37. These codes are commonly used to communicate medical services performed to third-parties, such as insurance providers. *Id.* Additionally, the term "final" is readily understood by its plain meaning. Thus, the term "final CPT code" does not require construction and will be given its plain and ordinary meaning as understood by a person of ordinary skill in the art.

## CONCLUSION

For the foregoing reasons, the Court interprets the claim language in this case in the manner set forth above. For ease of reference, the Court's claim interpretations are set forth in a table as Appendix A.

**So ORDERED and SIGNED this 15th day of December, 2011.**

**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**

# APPENDIX A

| Claim Term | Court's Construction |
|---|---|
| comparing the historical data to a set of historical criteria to define a history code | comparing information consisting of the patient's current health and, optionally, any previous medical history and any related family or social problems that becomes the basis for the patient's medical record and required documentation to certain adjustable, customized standards during the patient encounter in order to determine a value associated with the historical component in generating a CPT code |
| comparing the examination data to a set of examination criteria to define an examination code | comparing information that is the actual physical examination by the physician and any tests or procedures ordered or provided that becomes the basis for the patient's medical record and required documentation to certain adjustable, customized standards during the patient encounter in order to determine a value associated with the examination component in generating a CPT code |
| comparing the medical decision making data to a set of medical decision making criteria to define a medical decision making code | comparing information which is the result of the interaction of the history and examination portions of the encounter and represents the level of difficulty to the physician for forming a diagnosis and treatment plan(s) that becomes the basis for the patient's medical record and required documentation to certain adjustable, customized standards during the patient encounter in order to determine a value associated with the medical decision making component in generating a CPT code |
| computing a component historical code based on said input and a set of stored historical criteria | using a computer during the patient encounter to determine a value associated with the historical component in generating a CPT code based on choices corresponding to a patient's medical status that become the basis for the patient's medical record and required documentation fed into the computer and an adjustable, customized standard automatically applied by the computer to the portion of the patient's medical record and required documentation consisting of the patient's current health and, optionally, any previous medical history and any related family or social problems, on which a decision may be based |

16

| Claim Term | Court's Construction |
|---|---|
| computing a component examination code based on said input and a set of stored examination criteria | using a computer during the patient encounter to determine a value associated with the examination component in generating a CPT code based on choices corresponding to a patient's medical status that become the basis for the patient's medical record and required documentation fed into the computer and an adjustable, customized standard automatically applied by the computer to the portion of the patient's medical record and required documentation that is the actual physical examination by the physician and any tests or procedures ordered or provided, on which a decision may be based |
| computing a component medical decision code based on said input and a set of stored medical decision criteria | using a computer during the patient encounter to determine a value associated with the medical decision component in generating a CPT code based on choices corresponding to a patient's medical status that become the basis for the patient's medical record and required documentation fed into the computer and an adjustable, customized standard automatically applied by the computer to the portion of the patient's medical record and required documentation including the information which is the result of the interaction of the history and examination portions of an encounter and represents a level of difficulty to the physician for forming a diagnosis and treatment plan(s), on which a decision may be based |
| comparing the historical code, the examination code, and the medical decision making code to a set of final criteria to define a final CPT code | comparing the values associated with the historical component, examination component, and medical decision making component to a standard on which the final CPT code is based during the patient encounter |
| computing a final CPT code based on said historical code, said examination code and said medical decision code and a set of stored patient encounter criteria | using a computer during the patient encounter to determine the final CPT code based on the values associated with the historical component, examination component, and medical decision making component to an adjustable, customized standard related to the physician's encounter with the patient |
| weighting said historical code based on the number of times a historical criterion is met | assigning a relative level of influence to the historical code based on the number of times a historical criterion is met |
| weighting said examination code based on the number of times an examination criterion is met | assigning a relative level of influence to the examination code based on the number of times an examination criterion is met |

| Claim Term | Court's Construction |
|---|---|
| weighting said medical decision code based on the number of times a medical decision criterion is met | assigning a level of influence to the medical decision code based on the number of times a medical decision criterion is met |
| queries comprise diagnostic lists used in generating a patient's medical record | queries comprise lists of symptoms and characteristics used in creating, amending, and/or supplementing a patient's medical record. |
| final CPT code | No construction required |